UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY JARELL, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:12-CV-00920 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HOSPITAL FOR SPECIAL | : | JANUARY 29, 2013 |
| CARE, | : | |
|     Defendant. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 22) AND PARTIAL MOTION TO DISMISS (DOC. NO. 26)**

**I.     INTRODUCTION**

Plaintiff Gregory Jarell ("Jarell") brings this action against his former employer, Hospital for Special Care ("the Hospital"), for damages resulting from, inter alia, Jarell's termination of employment from the hospital, allegedly in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("the ADA"); and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 et seq. ("the CFEPA").  In addition, Jarell brings a state common law claim for negligent infliction of emotional distress.

Jarell first amended his Complaint on July 23, 2012.  See (Doc. No. 19).  The Hospital moved to dismiss Jarell's First Amended Complaint (Doc. No. 22).  The Hospital argued that Jarell (1) failed to allege he obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") as required to plead his Title VII and ADA claims; (2) failed to allege he suffered from a disability or requested a reasonable accommodation as required to plead his ADA and CFEPA claims; (3) failed to allege he engaged in protected activity in order to allege claims for retaliation; and (4)

1

failed to allege that the Hospital engaged in conduct arising out of his termination so as to allege a claim for negligent infliction of emotional distress.

In response, Jarell amended his complaint again on August 24, 2012.  See (Doc. No. 25).  The Hospital moved to dismiss again, this time only as to Count Five of Jarell's Second Amended Complaint—his claim for negligent infliction of emotional distress.  The Hospital argues, for the same reasons it argued in its first Motion to Dismiss, that Jarell has failed to plausibly allege his claim because he has not alleged any conduct arising out of his termination.  Because the Hospital raises the same argument as to Jarell's claim for negligent infliction of emotional distress in both Motions and admitted in its second Motion to Dismiss that Jarell amplified the allegations in his Second Amended Complaint to sufficiently allege his claims pursuant to Title VII, the ADA, and the CFEPA, the court denies the Hospital's first Motion to Dismiss (Doc. No. 22).  The court will consider the Hospital's second Motion to Dismiss as to Count Five below.

## II.     STATEMENT OF FACTS

Plaintiff Jarell is an African American adult male who was formerly employed by the Hospital as a Registered Respiratory Therapist.  Second Am. Compl. at ¶¶ 1, 6.  In 2009 and 2010, Jarell received "stellar" evaluations for his performance.  Id. at ¶ 14.  On or about March 18, 2011, he and another nurse, Susan Redmond, provided care to a patient.  Id. at ¶ 7.  After Jarell's shift, "a change of condition was determined and the patient was transported to another hospital for acute care."  Id. at ¶ 8.  The Hospital initiated an investigation regarding this patient and on April 2, 2011, two of Jarell's supervisors sent a memorandum headed "Failure to Provide Appropriate Documentation to Reflect Change in Patient Condition."  Id. at ¶¶ 10-11.

Jarell responded to this memorandum in writing by denying the allegation that he failed to provide appropriate documentation and claiming the Hospital was on a 'witchhunt." Id. at ¶ 12.  Director of Respiratory Services Mary Turley responded to Jarell and re-assigned him to the Hospital's main campus to allow him to "work closely with supervisors and others for an evaluation of . . . clinical skills." Id. at ¶ 13.  On or about April 11, 2011, Jarell sent a letter to the Connecticut Department of Public Health alleging that the Hospital was ignoring the recommendations of the respiratory therapists when making patient care decisions.  Id. at ¶ 16.  On April 15, 2011, Jarell responded to Ms. Turley's memorandum to dispute the allegations regarding the incident with the patient and explain how he thought he was being targeted by the Hospital.  Id. at ¶ 15.  Upon Jarell's information and belief, the Hospital did not discipline or reprimand other non-African American individuals who worked the same shift that he did or who held similar positions.  Id. at ¶¶ 17-18.

Jarell suffered emotional distress and took leave pursuant to the Family Medical Leave Act beginning on or about April 16, 2011.  Id. at ¶ 20.  Jarell requested the time off by letter dated April 28, 2011, due to anxiety and depression related to work conditions.  Id.  During his leave, Jarell was under the care of a psychiatrist and psychologist.  Id.  He submitted documentation to the Hospital from his physicians related to his work-related depression and anxiety.  Id. at ¶ 21.  The Hospital granted Jarell's leave on May 5, 2011.  Id. at ¶ 22.  On or about July 20, 2011, Jarell requested to remain out of work for 14 weeks.  Id. at ¶¶ 21(2), 30.[1]  Ms. Turley responded by granting Jarell a two week personal leave of absence effective July 24 so as to give the

---

[1] The Complaint includes two paragraphs headed "21" and "22."  When the court refers to the second set of paragraph headed "21" or "22," the court will designate it as "21(2)" or "22(2)."

3

Hospital time to consider Jarell's request.  Id. at ¶ 22(2).  Jarell met with the Hospital to provide information about his leave.  Id. at ¶¶ 23-24.  On August 8, the Hospital sent another letter extending Jarell's leave until August 19.  Id. at ¶ 24.

On August 16-19, 2011, the Connecticut Department of Public Health Facility Licensing and Investigations Section conducted an unannounced investigation of the Hospital and recommended the Hospital take necessary "corrective measures."  Id. at ¶ 19.  On August 17, the Hospital terminated Jarell's employment.  Id. at ¶ 25.

### III.  STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 130 S.Ct. 983, 986–87 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at

570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV.   DISCUSSION

Under Connecticut law, a cause of action for negligent infliction of emotional distress requires a showing "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." Perodeau v. City of Hartford, 259 Conn. 729, 748–49 (2002) (quoting Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978)); see Miner v. Town of Chesire, 126 F. Supp. 2d 184, 197 (D. Conn. 2000). In employment cases, Connecticut courts have "kept a tight rein on [negligent infliction of emotional distress] claims by holding that even an employer's wrongful employment actions are not enough to sustain a claim for negligence infliction of emotional distress." Hernandez v. City of Hartford, 30 F. Supp. 2d 268, 273 (D. Conn. 1998) (citing Hill v. Pinkerton Sec. & Investigation Servs., 977 F. Supp. 148, 159 (D. Conn. 1997)). Therefore, "[i]n the employment context, liability for negligent infliction of emotional distress cannot arise from behavior that is part of an ongoing relationship. It can arise only from conduct occurring in the termination process." Mody v. Gen. Electric Co., 2006 WL 1168051 at *3 (D. Conn. Apr. 26, 2006) (internal quotation marks and citations omitted); Perodeau, 259 Conn. at 762–63 (holding that municipal employee could not be liable for negligent infliction of emotional distress claim based on

conduct occurring "within a continuing employment context" rather than "in the termination of employment").

Negligent infliction of emotional distress claims by an employee against an employer must allege "unreasonable conduct in the manner in which the employer carried out an employment action." Miner, 126 F. Supp. 2d at 198. Unreasonable action means that "the employer's conduct must be humiliating, extreme, or outrageous." Id. (citing Johnson v. Chesebrough-Ponds, Inc., 1996 WL 734043 at *3 (2d Cir. 1996) (unpublished opinion)). Accordingly, a plaintiff bringing a negligent infliction of emotional distress claim in an employment context must show that "'the defendant's conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress that [that] distress, if it were caused, might result in illness or bodily harm.'" Mody, 2006 WL 1168051 at *3 (quoting Perodeau v. City of Hartford, 259 Conn. 729, 751 (2002)).

Jarell has failed to allege a plausible claim for negligent infliction of emotional distress because he has not alleged that the Hospital engaged in any unreasonable conduct during the termination process. Jarell alleges that he suffered emotional distress when the Hospital moved his shift to the main campus, see Second Am. Compl. at ¶¶ 13, 20, and that the Hospital "should have realized that terminating the plaintiff's employment would cause further emotional distress." Id. at Count Five, ¶ 28. The Hospital's conduct in altering Jarell's shift cannot form the basis of a negligent infliction of emotional distress claim as it is outside the temporal boundary of the termination process. See Mody, 2006 WL 1168051 at *4 (clarifying that the termination process

does not begin "when an employer and employee first encounter a conflict").  Therefore, the only actions that the court may consider are those that the Hospital took at the time it terminated Jarell.  Jarell makes no allegations besides the fact that the Hospital ended his employment.  However, "a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress."  Id. at *3 (citing Perodeau, 259 Conn. at 751).  Therefore, the court dismisses Jarell's claim for negligent infliction of emotional distress for failure to state a claim.

## V.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the Hospital's Motion to Dismiss (Doc. No. 26) Count Five of the Second Amended Complaint.  The court **DENIES** the Hospital's first Motion to Dismiss (Doc. No. 22) as moot.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 29th day of January, 2013.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge